**SIGNED THIS: July 20, 2011**

_____
                    **MARY P. GORMAN**
            **UNITED STATES BANKRUPTCY JUDGE**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | In Bankruptcy |
| MAULDING DEVELOPMENT, LLC, | ) | |
| | ) | Case No. 10-72715 |
| Debtor. | ) | |

## O P I N I O N

Before the Court is First Commercial Bank of Florida's "Motion for Rehearing of Order dated February 8, 2011". The Order in question struck the claim filed on behalf of First Commercial Bank because the claim was paper filed when it should have been electronically filed and because neither First Commercial Bank nor its attorney responded to the Court's Order to Show Cause regarding the paper filing. Because the Motion for Rehearing and subsequent documents filed by First Commercial Bank fail to establish

grounds for vacating the Order striking the claim — and that is really the of essence the relief sought in the Motion for Rehearing — the Motion for Rehearing will be denied.

**Factual and Procedural Background**

Maulding Development, LLC ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on August 31, 2010. On its schedules, the Debtor listed First Commercial Bank of Florida ("FCB") as an unsecured creditor with a claim in the amount of $13,913,827. The Debtor expressly identified the claim as contingent, unliquidated, and disputed.

A notice of the meeting of creditors was sent to all scheduled creditors on September 4, 2010. That notice included a statement that a general claims bar date had been set for January 20, 2011, and contained information about the requirement for filing a proof of claim if a creditor's claim had been scheduled as contingent, unliquidated, or disputed. Also included in the notice was a specific notation directing creditors to the Court's website for more information about filing documents and about the Court's mandatory electronic filing policy. The notice was sent through the Bankruptcy Noticing Center ("BNC") and FCB is listed on the BNC's certificate of service as being one of the recipients of the notice.

On October 18, 2010, Richard Webber, an attorney in Orlando, Florida, paper filed a Notice of Appearance on behalf of FCB and asked that all notices be sent to his attention. On that same day, this Court issued an Order to Show Cause ("OTSC") why the Notice of Appearance should not be stricken for having been filed in apparent violation of this Court's mandatory electronic filing policy. A copy of the Court's Amended General Order

entered January 10, 2007, was included with the OTSC, and Mr. Webber was given until November 4, 2010, to respond to the OTSC. The OTSC was mailed through the BNC to Mr. Webber. When no response to the OTSC was received, the Notice of Appearance was stricken by Order dated November 5, 2010. A copy of the Order striking his appearance was promptly mailed through the BNC to Mr. Webber.

On January 19, 2011, a paper claim for FCB was received by the Clerk's office from Mr. Webber. Mr. Webber also sent the Clerk correspondence asking that the claim be filed. The claim was filed but, on the same date, this Court issued an OTSC why the claim should not be stricken for having been paper filed in apparent violation of this Court's mandatory electronic filing policy. The form of the OTSC was the same as Mr. Webber had received in October 2010 and also contained a copy of the same Amended General Order. Mr. Webber was given until February 5, 2011, to respond to the OTSC regarding FCB's claim. The OTSC was sent through the BNC, and the BNC's certificate of service shows that Mr. Webber was served with the OTSC.

When no response to the OTSC was received, this Court entered an Order on February 8, 2011, striking the claim of FCB filed by Mr. Webber. A copy of the Order striking the claim was promptly mailed through the BNC to Mr. Webber.

On March 8, 2011, Mr. Webber paper filed the Motion for Rehearing. In it, he claimed that he had never received the OTSC regarding the claim and that the striking of the FCB claim was an unconstitutional taking of FCB's property rights. The Motion for Rehearing was set for hearing on March 29, 2011.

On March 29th, FCB appeared by local counsel, Mariann Pogge. The Debtor

appeared by its attorney, James Enlow. Ms. Pogge stated that, although Mr. Webber had filed a Motion for Rehearing, he really meant to seek reconsideration of the Court's Order striking FCB's claim.[1] She acknowledged that, contrary to the representations made in the Motion for Rehearing, the OTSC regarding the claim had, in fact, been received at Mr. Webber's office but, through some inadvertence, had not been brought to his attention. She stated that FCB had been taken over by the Federal Deposit Insurance Corporation ("FDIC") on January 7, 2011, and that, at some point shortly thereafter, the FDIC had asked Mr. Webber to file a claim on behalf of FCB. Ms. Pogge also stated that, on January 21, 2011, the FDIC had assigned the assets of FCB, including the claim against the Debtor here, to First Southern Bank, and that the assignment was retroactive to January 7, 2011. She argued that the filing of the claim by Mr. Webber was a "last minute type deal" and urged the Court to vacate its prior Order striking the claim and to allow her to file an amended claim on behalf of First Southern Bank which would then be deemed timely filed.

Mr. Enlow objected to the Motion for Rehearing on behalf of the Debtor. He argued that FCB and its attorney should be held to the same standards as all others who practice before this Court. Further, he argued that, based on Ms. Pogge's comments, it appeared that FCB was not the actual owner of the claim against the Debtor when FCB's attorney attempted to file the claim on its behalf. The Court set a schedule for the Debtor to file a

---

[1] Because the Motion for Rehearing was filed more that 14 days after the entry of the Order striking FCB's claim, it will be considered as seeking relief from the Order pursuant to Fed.R.Civ.P. 60(b) as made applicable to these proceedings by Fed.R.Bankr.P. 9024. FCB suggests that Fed.R.Bankr.P. 3008 applies but this Court disagrees. Rule 3008 allows reconsideration of the allowance or disallowance of a claim. FCB's claim was neither allowed nor disallowed as it was stricken before any hearing could be held on its merits.

-4-

written response to the Motion for Rehearing and for FCB to file a reply. Those documents have now been filed and the matter is ready for decision.

**Jurisdiction**

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. § 1334. Matters involving the administration of the estate are core proceedings. *See* 28 U.S.C. § 157(b)(2)(A).

**Legal Analysis**

Federal Rule of Bankruptcy Procedure 5005(a)(2) allows bankruptcy courts to require documents to be filed by electronic means provided that reasonable exceptions to the requirement are established. Fed.R.Bankr.P. 5005(a)(2). The Bankruptcy Judges of the Central District of Illinois entered their first General Order Authorizing Electronic Case Filing on September 2, 2003. Since that time, several amended orders have been entered which not only authorize, but actually mandate, electronic filing. The current controlling orders include the Third Amended General Order Authorizing Electronic Case Filing and the Amended General Order Assigning All Cases to the Electronic Filing System. Both Orders were entered on January 10, 2007.

The Amended General Order, a copy of which was included in each OTSC sent to Mr. Webber, states that the Bankruptcy Court of the Central District of Illinois will "no longer accept paper documents for filing except from *pro se* debtors, certain creditor-claimants, and attorneys currently enrolled in…ECF training[.]" The Amended General

Order defines the creditor-claimants who must file electronically as "credit card companies, financial institutions, and collection agencies who receive multiple bankruptcy notices annually[.]" A fifteen-day grace period to paper file after an attorney completes training is also provided for in the Amended General Order. The Third Amended General Order, referred to in both OTSC documents, provides exactly the same information about this Court's mandatory electronic filing policy and also includes more details about the rules and regulations for electronic filing. Both orders are posted on the Court's website.

The Clerk of the Bankruptcy Court for the Central District of Illinois offers in-person electronic filing training classes at each of the Court's three divisional offices. Upon completion of training, an online test is required for the issuance of a login and password to access the Court's system. When a potential filer has already completed training and obtained a login and password from another court, local training is not required. For those filers, several brief exercises and testing can be completed online through the Court's website. Attorneys who are licensed to practice in this District may obtain a login and password to be used for all categories of electronic filing. Attorneys not so licensed or non-attorney representatives of the creditor-claimants who must file electronically may obtain limited-use logins and passwords for the filing of claims, reaffirmation agreements, and a few other specified documents. The Clerk also provides a toll-free help line staffed by information technology department employees to provide technical assistance to attorneys and others who have questions about the requirements. To avoid surprise about and to encourage compliance with the mandatory electronic filing requirements, the Clerk includes a notation about the mandatory policy on every notice, order, or other document

generated by the Clerk's office.

In the Springfield Division of this District, paper documents received for filing are actually filed even if the filing appears to be in violation of the Court's mandatory electronic filing policy. An OTSC is then issued to the paper filer setting a date for a response to be made showing cause why the paper filed document should not be stricken.[2] The OTSC contains notice of the Court's mandatory electronic filing policy, a copy of the Amended General Order, and instructions to go to the Court's website for further information. The OTSC states that, if no response is filed by the date specified, the paper filed document may be stricken without further notice or hearing. This Court's procedures in issuing an OTSC and striking improperly-filed paper documents are in line with the practices of other bankruptcy courts . See, e.g., *In re Barker*, 2011 WL 1322381 at *1 (Bankr. S.D. Ga. Mar. 15, 2011) (paper filed proof of claim stricken when attorney filer failed to appear at OTSC hearing); *In re Thoekary*, 2008 WL 5329310 at *1 (Bankr. E.D. Pa. Dec. 19, 2008) (documents paper filed by attorney in violation of standing order stricken). The effect of striking a claim is that, although the claim is still visible in the record, the claim is a nullity as though it had never been filed.

---

[2] The OTSC procedure is followed only in the Springfield Division of the Central District of Illinois. In the Peoria and Danville Divisions, documents which are submitted in paper form by filers who appear to be required to file electronically are not actually filed but are returned to the filer. The propriety of this practice is not an issue in this case. The difference in practice is noted, however, simply to suggest that, if this case were pending in one of the other Divisions and Mr. Webber had paper filed FCB's claim in one of those places, the claim would not have been filed but rather would have been returned to him. This would make any argument that a claim was ever timely filed by FCB much more tenuous than it already is.

FCB seeks to vacate this Court's Order of February 8, 2011, striking its proof of claim and alleges that its attorney's failure to comply with this Court's mandatory electronic filing policy should be overlooked. FCB suggests that Mr. Webber's failure to respond to the Court's OTSC, even though it was admittedly received in his office, constitutes excusable neglect and a basis for the relief sought. FCB's position, however, misses the mark by a wide margin. Mr. Webber's mistake was to attempt to paper file the claim in the first place. The claim was stricken because it was paper filed in violation of the this Court's mandatory electronic filing policy. FCB's position now seems to presume that, if a response had been made to the OTSC, the OTSC would have been dismissed and the claim considered as timely filed. But it is questionable whether any response Mr. Webber might have made to the OTSC would have resulted in the claim not being stricken. Certainly nothing in the arguments being made now suggests that a response to the OTSC would have been persuasive. Further, nothing in FCB's current arguments suggests that relief should be granted to FCB based on a finding of excusable neglect.

"Excusable neglect" may form the basis for granting relief under Federal Rule of Civil Procedure 60(b) and for extending time periods under Federal Rule of Bankruptcy Procedure 9006(b)(1). "Excusable neglect" includes both simple faultless omissions to act and omissions caused by carelessness. See *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership et al.*, 507 U.S. 380, 388, 113 S.Ct. 1489, 1495 (1993). In considering whether excusable neglect has occurred, a court should consider all relevant circumstances, including prejudice to another party, the reason for the omission, whether the omitted act was under the control of the movant, and whether the movant acted in good faith. *Id.* at

395, 113 S.Ct. at 1498. Parties are bound by the acts of their attorneys and cannot avoid the consequences of the acts or omissions of their freely selected agents. *Id.* at 397, 113 S.Ct. at 1499; see also *Tango Music, LLC v. Deadquick Music, Inc.*, 348 F.3d 244, 247 (7th Cir. 2003); *Lincoln Diagnostics, Inc. v. Panatrex, Inc.*, 2008 WL 2796988 at *3 (C.D. Ill. Jul. 21, 2008).

This Court has discretion to consider the equities and to determine whether relief should be granted to FCB. See *Robb v. Norfolk & Western Ry. Co.*, 122 F.3d 354, 359 (7th Cir. 1997). In looking at the relevant circumstances, the preeminent factor to be considered is the fault in the omission or the delay. See *In re KMart Corp.*, 381 F.3d 709, 715 (7th Cir. 2004). Where the conduct that caused the omission is claimed to be excusable neglect but was all within the control of the party or the party's attorney and was, therefore, their own fault, relief under the excusable neglect standard is not justified. *Id.* Accordingly, for FCB to prevail, this Court must find that the paper filing of its claim was an act of negligence or carelessness rather than a willful, knowing violation of this Court's published policies. See *In re National Steel Corp.*, 316 B.R. 510, 515-16 (Bankr. N.D. Ill. 2004).

Here, FCB's defense of excusable neglect is presented in a manner that obfuscates the real issues. FCB focuses on the failure of its attorney to respond to the OTSC and suggests that such failure is the cause of its problems. It asserts that the internal mail problem in its attorney's office justifies relief under the excusable neglect standard. However, the real problem for FCB was that its attorney ignored this Court's mandatory electronic filing policy. The fault for the knowing and, apparently, intentional failure to comply with the Amended General Order lies squarely with Mr. Webber. Under such circumstances, relief under the excusable neglect standard is not justified.

Mr. Webber's first foray into practice in this District occurred with his paper-filed Notice of Appearance received by the Clerk on October 18, 2010. That paper filing resulted in an OTSC being issued and, ultimately, the Notice of Appearance being stricken on November 5, 2010, due to Mr. Webber's failure to respond to the OTSC. The OTSC contained a copy of the Amended General Order, and both the OTSC and the November 5th Order contained the Court's standard notice that a mandatory electronic filing policy exists in this District. The November 5th Order was promptly mailed to Mr. Webber. He does not dispute receiving all of these prior documents. Accordingly, by early November 2010, Mr. Webber was fully aware of this Court's electronic filing requirements and, more importantly, was aware of this Court's strict enforcement of its own policies.

In response to his Notice of Appearance being stricken, Mr. Webber could have applied to be admitted to practice in this District and could have obtained a login and password for filing here. Alternatively, without being admitted, he could have applied for a limited login and password to ensure his ability to, at least, file a claim. Mr. Webber also might have suggested to his client that, with $13 million at stake, it might be wise to hire local counsel. Of course, this Court has no knowledge of what Mr. Webber did or did not discuss with representatives of FCB. It does know that, between early November 2010 and January 20, 2011, he did not obtain electronic filing privileges with this Court.

Mr. Webber now suggests that his paper filing can be justified because it was the FDIC which directed him to file the claim.[3] His local counsel argues that it was a "last

---

[3] At the March 29th hearing, when the involvement of the FDIC was mentioned, this Court questioned whether such involvement resulted in a stay of these proceedings and an extension of the claims bar date which was running at the time. This Court invited both

-10-

minute" deal. These arguments, however, go nowhere. The FDIC does not control the practice of law before this Court or this Court's procedures for filing claims. Whether it was FCB, the FDIC, First Southern Bank, or some other entity that gave the go-ahead for the claim filing, it makes no difference here. Mr. Webber knew of the Court's electronic filing policy and failed to comply with it. Further, Mr. Webber knew of the electronic filing policy for months before the claim was due and made no effort to prepare for the fact that he might be asked to file a claim. When he was asked to get the claim on file, he made no attempt to comply with the Court's policy. On January 18th, when he prepared the claim and sent it to the Court by overnight mail, he might instead have gone online and obtained a limited login and password or contacted local counsel to assist in the filing. He apparently did neither and simply decided to paper file the claim despite his prior experience of having a paper filing stricken by this Court.

Mr. Webber says he did not receive the OTSC with respect to the paper filed claim and, therefore, did not respond. He says that is grounds for relief, but he fails to state what he would have put in any successful response to the OTSC if he had made such a response. He makes the argument now that the original notice of the meeting of creditors which

---

parties to address the issue in the further documents to be filed. The Debtor pointed out in its response that, pursuant to the Financial Institutions Reform, Recovery and Enforcement Act, a receiver may request a 90-day stay of proceedings in any action in which the institution under receivership — here FCB — is a party. *See* 12 U.S.C. § 1821(d)(12)(A)(ii). But, as the Debtor also noted, the FDIC in its capacity as receiver never requested any stay here, and it removed itself completely from involvement with FCB by selling FCB's assets with a retroactive effective date. FCB did not respond to these arguments of the Debtor and made no claim of its own that there is any statutory authority to suggest that the limited involvement of the FDIC with FCB provides support for any of the relief requested here.

recommends that creditors go to the Court's website for information about the Court's mandatory electronic filing policy is insufficient notice because it does not provide sufficient details of the policy. The argument is easily dismissed. First, the notice is more than sufficient to inform creditors that there is additional information they must review if they want to file documents with this Court. Anyone who ignores a notice of a "mandatory" procedure does so at his own risk. Further, Federal Rule of Bankruptcy Procedure 5005(a)(2) provides notice that electronic filing may be mandated on a local level. Any attorney practicing in the bankruptcy courts, and certainly any attorney representing a creditor with a $13 million claim, should have knowledge of the Bankruptcy Rules. Finally, by the time Mr. Webber filed the claim for FCB in January 2011, he had actual knowledge of the details of this Court's mandatory electronic filing policy and had experienced first-hand the consequences of not complying with it. To suggest now that FCB and its attorney did not know that this Court required documents to be electronically filed is preposterous.

FCB also now suggests that it is entitled to relief because it was not subject to this Court's electronic filing policy because FCB does not regularly file claims in the Central District of Illinois. This argument is also easily dismissed. First, FCB is subject to the policy. The policy covers financial institutions which regularly receive bankruptcy notices. It is not limited to institutions that receive notices from this Court alone. Second, FCB did not file the claim in question on a *pro se* basis, so whether the policy would have applied and been enforced if a non-lawyer employee of FCB had prepared and mailed in the claim form is not the issue here. FCB inaccurately asserts that it would have been allowed to paper file its claim if it had filed the claim *pro se*, and, therefore, its attorney was allowed to paper file

the claim on its behalf. There is simply no fair reading of this Court's Amended General Order which would support such a position. The electronic filing policy of this Court clearly and unequivocally applies to all attorney filers and, therefore, applied to Mr. Webber.

When he filed FCB's claim, Mr. Webber had already been notified in no uncertain terms by this Court that the mandatory electronic filing policy applied to him and that consequences would result if he failed to comply. Under such circumstances, his failure to comply with the Court's electronic filing policy as mandated by the Amended General Order cannot be considered excusable neglect. The paper filing was made with full knowledge of this Court's published policies and was not an act of negligence or carelessness. Further, the attempt to paper file in the face of such knowledge is not excusable. Based on all of the foregoing, the Motion for Rehearing must be and will be denied.

One additional issue not raised by the Debtor but which cannot be ignored by this Court is that, when Mr. Webber filed the Motion for Rehearing, he was not licensed to practice law in the Central District of Illinois.[4] The filing of the Motion for Rehearing constitutes the practice of law. Pursuant to the Local Rules of the District Court of the Central District of Illinois, which apply to practice before this Court, only attorneys licensed

---

[4] The Motion for Rehearing was also paper filed and could have been stricken on that basis. The OTSC stated that, if a response to the OTSC was paper filed, the Court could consider it but could also strike it without further notice or hearing. The Motion for Rehearing was a response — albeit a tardy response — to the OTSC and, therefore, subject to being stricken without further notice or hearing.

-13-

in the District may appear in the District. *See* CDIL-LR 83.5 (A), (G). Practice by anyone who has not been admitted constitutes the unauthorized practice of law and sanctions may issue. *See* CDIL-LR 83.5(G). Accordingly, on this entirely separate basis, the Motion for Rehearing may be and will be denied for having been filed on behalf of FCB by a person not licensed to practice law before this Court.

In conclusion, this Court must acknowledge that the result here is unfortunate. It is, however, correct. Attorneys cannot represent clients before courts where they are not licensed and do not even have limited filing privileges. The results of such conduct are inevitable and, more importantly, clearly foreseeable. But, the conduct is not excusable and, therefore, the relief requested cannot be granted.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###